IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-00141-WJM-MEH

JONATHAN N. ESTES,

    Petitioner,

v.

T. G. WERLICH, Warden,
M. D. CARVAJAL, Complex Warden,
DEAN WILLIAMS, Director of C.D.O.C., and
PHILIP J. WEISER, Attorney General of the State of Colorado,

    Respondents.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Before the Court is claim five of the amended Application [filed February 8, 2016; ECF 9] (the only claim remaining in this action). District Judge William J. Martinez has referred the amended Application for a report and recommendation as to disposition of the claim. ECF 55. The Court recommends that claim five be dismissed as procedurally barred, or, alternatively, on the merits.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v.*

## BACKGROUND

**I. State Court Proceedings**

In February 2006, Petitioner was convicted by a jury in the District Court for the City and County of Denver, case number 05CR674, of attempted first degree murder after deliberation and other offenses. The Colorado Court of Appeals summarized the evidence at Petitioner's trial as follows:

> On November 5, 2004, R.J., the victim, was shot at a Regional Transportation District (RTD) Park-n-Ride in the Montbello neighborhood of Denver. The victim drove away, and police later found him laying in the grass outside of a home approximately one half mile from the Park-n-Ride.
>
> Nearly two months later, on December 29, 2004, [Nanette Calhoun] called the police to report an ongoing domestic violence incident at her home involving defendant. [Calhoun] is the mother of defendant's former girlfriend, [Jaqueela Young], who is now defendant's wife. When the police arrived, [Calhoun] warned them to be careful because defendant carried a gun and had shot someone at the Park-n-Ride. Later that day, [Calhoun] went to the police headquarters to give a statement. When [Calhoun] returned home, the police spoke with [Young], who went to the police station the following day to give a statement.
>
> In her statement, [Young] informed the police that on the day of the shooting, defendant was supposed to pick her up from work. When she called him, he told her he "couldn't pick [her] up because he was hot," meaning that he had just done something and the police were searching for him. [Young] explained that defendant told her he had shot someone at the Park-n-Ride located at Albrook and Peoria. The next day, when she saw defendant, he said, "I just wanted his rims. I could've got some money for his rims." When [Young] asked defendant if he really shot someone, he responded, "[Y]eah, I think so." Defendant never told [Young] if anyone else was involved in the shooting, but said he was there with a friend. [Young] stated that defendant threatened to shoot up her mother's house if she acted "like a snitch" and talked to the police.
>
> Prior to trial, defendant was held in the Adams County Jail. Police obtained recordings from the jail of phone conversations between defendant and [Young] in which defendant told [Young] if she did not appear in court, the prosecution could not play the video of her interview. Defendant instructed her to list only a post office box as a return address when sending mail to him so that the police could not use her home address to subpoena her. He threatened, "I'm going to beat the shit

---

*Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).

2

> out of you, bitch," and told [Young] if she did not come visit him, he would "smoke her ass."
>
> Before trial, [Young] wrote two letters to the court recanting her statements to the police and refusing to testify at trial. [Young] appeared at trial, but testified she was unable to remember what she had told the police and that she had lied in her videotaped statement. After the jury trial, defendant was convicted of all charges against him, and sentenced to forty years in the Department of Corrections (DOC) plus five years parole on the attempted first degree murder after deliberation charge, to run consecutively to five years in the DOC plus three years parole on the attempted aggravated robbery count.

*People v. Jonathan Nathaniel Estes*, No. 06CA1613, at 2-4 (Colo. App. Nov. 19, 2009) (unpublished). ECF 20-4. Petitioner's convictions were affirmed on direct appeal. *See id.* The Colorado Supreme Court denied certiorari review on May 17, 2010. ECF 20-6.

Petitioner thereafter filed a motion for post-conviction relief, which was denied by the state district court in April 2012, following an evidentiary hearing. State Court Record ("R."), Public Documents at 455-61. The Colorado Court of Appeals affirmed. ECF 20-10. Petitioner's request for certiorari review was denied by the Colorado Supreme Court on February 8, 2015. ECF 20-12.

**II. Federal Habeas Proceedings**

Petitioner initiated this action on January 19, 2016, by filing *pro se* an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. ECF 1. He later filed an amended Application. ECF 9. The amended Application asserts five claims for relief. Claims one through four are based on the ineffective assistance of trial counsel. *Id.* at 12-16. In claim five, Petitioner maintains that pre-trial counsel labored under a conflict of interest stemming from the public defenders' concurrent representation of an alternative suspect. *Id.* at 17. Respondents filed a Pre-Answer Response to the amended Application, ECF 20, to which Petitioner filed a Reply, ECF 23. Respondents then filed an Answer, ECF 47 and Petitioner filed a Reply, ECF 49. Respondents

3

assert that the claims in the amended Application are procedurally barred, and, alternatively, that the claims lack merit.

On March 6, 2017, District Judge Martinez issued an Order, ECF 83, adopting the January 20, 2017 Recommendation of United States Magistrate Judge, ECF 75, and denied the amended Application without prejudice as a "mixed" petition because it asserted four unexhausted claims (claims one through four) and one claim that was "technically exhausted" (claim five). District Judge Martinez stayed the action so that Petitioner could exhaust claims one through four in the state courts. ECF 83.

Before the exhaustion process was complete, Petitioner filed a "Motion for Voluntar[ ]y Dismissal of Claims Pending State Court Exhaustion" on January 26, 2021. ECF 139. On September 20, 2021, District Judge Martinez issued an Order, ECF 170, adopting the June 23, 2021 Recommendation of United States Magistrate Judge, ECF 157, and dismissed claims one though four of the amended Application without prejudice pursuant to Fed. R. Civ. P. 41(a)(2). The amended Application was reinstated and the stay order lifted so that Petitioner could proceed with claim five of the amended Application. ECF 170.

Petitioner asserts in claim five that his Sixth Amendment right to conflict-free counsel was violated when pre-trial counsel, Cynthia Mares, an attorney with the Denver Public Defender's Office's (DPD's Office), represented him during initial pre-trial proceedings while the DPD's Office simultaneously represented alternate suspect Derrick Moore. ECF 9 at 17. Petitioner alleges that at the time of the concurrent representation, the police were investigating Moore, who was then a juvenile, as a suspect for the crime with which Petitioner was charged; that the police attempted to question Moore about his involvement in the attempted murder, but Moore invoked his right to counsel, the P.D. was appointed, and Moore thereafter declined to speak to the police.

*Id.* Petitioner asserts that he asked Ms. Mares on January 16, 2005 to conduct a pre-trial investigation of Moore as an alternate suspect in the shooting, but Ms. Mares later told him on March 3, 2005 that because the DPD's Office had also represented Moore earlier in the proceedings, she was unable to investigate Moore or suggest him as an alternate suspect for the purpose of plea negotiations, despite the fact that, according to Ms. Mares, the gun found in Moore's possession was confirmed to be the gun used in the shooting. ECF 9 at 17; ECF 23 at 4-5. Petitioner further contends that the DPD Office's concurrent representation of him and Moore prevented pre-trial counsel from showing Moore's photo to eyewitnesses who had never seen Moore's photo in a photographic lineup. ECF 23 at 4; *see also* ECF 169 at 2.

## LEGAL STANDARDS

"[A] state prisoner must exhaust available state remedies before presenting his claim to a federal habeas court." *Davila v. Davis*, ___ U.S. ___, 137 S.Ct. 2058, 2064 (2017) (citing 28 U.S.C. § 2254(b)(1)(A)). "To exhaust a claim, a state prisoner must pursue it through 'one complete round of the State's established appellate review process,' giving the state courts a 'full and fair opportunity' to correct alleged constitutional errors." *Selsor v. Workman*, 644 F.3d 984, 1026 (10th Cir. 2011) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

A claim that has been procedurally defaulted in the state courts on an independent and adequate state procedural ground is barred from federal habeas review, unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the federal violation, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Grant v. Royal,* 886 F.3d 874, 889-90 (10th Cir. 2018) (internal citations omitted). "A state procedural default is independent if it relies on state law, rather than federal law," and is "adequate if it is firmly established and regularly followed."

5

*Smith v. Workman*, 550 F.3d 1258, 1274 (10th Cir. 2008) (internal quotation marks omitted). Under the fundamental miscarriage of justice exception, the petitioner must make a colorable showing of actual innocence. *See Murray v. Carrier,* 477 U.S. 478, 496 (1986) ("[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.").

In determining whether a habeas petitioner has overcome any procedural barriers to federal habeas review of a claim on the merits, relevant factual findings by the state courts are presumed correct, unless rebutted by clear and convincing evidence. *Fontenot v. Crow*, 4 F.4th 982, 1018 (10th Cir. 2021) (citing 28 U.S.C. § 2254(e)(1)).

The Court reviews *de novo* a federal claim that was not adjudicated on the merits by the state courts. *Harmon v. Sharp*, 936 F.3d 1044, 1057 (10th Cir. 2019); *Grant*, 886 F.3d at 889. However, the Court still must presume the state court's factual findings pertinent to the claim are correct under § 2254(e)(1). *See id.*

A petitioner's *pro se* status does not exempt him from the requirement of demonstrating either cause and prejudice or a fundamental miscarriage of justice. *See Lepiscopo v. Tansy*, 38 F.3d 1128, 1130 (10th Cir. 1994).

## ANALYSIS

### I. Procedural Default

In the January 20, 2017 Recommendation of United States Magistrate Judge, ECF 75, the undersigned recommended a finding that claim five was *likely* procedurally defaulted, and thus technically exhausted, because Petitioner raised a conflict-of-interest claim in the state district court in his first motion for post-conviction relief, the district court denied relief, but Petitioner did

6

not appeal the denial of the claim to the Colorado Court of Appeals. *See* R., Public Documents 309, 314-17, 455-58; ECF 20-7. Petitioner attempted to raise the conflict-of-interest claim again in his second state post-conviction proceeding, but the state district court denied relief on March 20, 2020 on the ground that the claim was raised in Petitioner's previous state post-conviction proceeding and Petitioner failed to appeal the district court's order denying relief. The state court concluded that Colo. Crim. P. 35(c)(3)(VI) barred relitigation of the claim. ECF 135-2 at 2. *See also* Colo. Crim. P. 35(c)(3)(VI) (authorizing district court to deny any claim that was raised and resolved in a prior post-conviction proceeding).

The Court finds that claim five was procedurally defaulted in the state courts. Therefore, Petitioner must meet the cause and prejudice standard or the fundamental miscarriage of justice exception to overcome default in order for the Court to reach the merits of the claim.

### A. Cause for Procedural Default

#### 1. *Martinez v. Ryan*

Petitioner argues that his procedural default of claim five should be excused under *Martinez v. Ryan*, 566 U.S. 1 (2012), because the conflict-of-interest claim asserted in the amended Application was not addressed by the state district court due to post-conviction counsel's ineffective representation in the initial collateral review proceeding. ECF 23 at 3. Petitioner asserts that post-conviction counsel failed to properly present the claim to the state court in the amended Rule 35(c) motion, so when Petitioner was called to testify about pre-trial counsel's representation at the state evidentiary hearing the prosecution objected based on a lack of notice and the trial court sustained the objection. *Id.*; *see also* R., 4/6/12 Hrg. Tr. at 58-60.

The state court record reflects that the district court did not rule on the issue of whether the DPD Office's concurrent representation of Petitioner and Moore had an adverse effect on pre-trial

counsel's representation of Petitioner. Instead, the court addressed whether the DPD Office's concurrent representation of Petitioner and Moore had an adverse effect on *trial counsel's* representation of Petitioner, and concluded that it did not. R., Public Documents, at 458. Petitioner did not appeal the district court's order.

In *Martinez*, the Supreme Court held that:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez,* 566 U.S. at 17. To constitute cause to excuse a procedural default, Petitioner must show that he received ineffective assistance of postconviction counsel and that the procedurally defaulted ineffective assistance of trial counsel claim is "substantial"— i.e., has "some merit." *Id*. at 15.

The actions or omissions of state post-conviction appellate counsel cannot excuse a procedural default of a federal claim. The Supreme Court made clear in *Martinez* that attorney errors on appeal from an initial-review collateral proceeding do not qualify as cause for a procedural default:

> The rule of *Coleman* governs in all but the limited circumstances recognized here. The holding in this case does not concern attorney errors in other kinds of proceedings, *including appeals from initial-review collateral proceedings*, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.

*Martinez*, 566 U.S. at 16 (emphasis added, citation omitted). *See also Coleman*, 501 U.S. at 756-57 (concluding that because a petitioner has no constitutional right to counsel to pursue an appeal in a state post-conviction proceeding, any attorney error that led to the default of the petitioner's

8

claims in state court cannot constitute cause to excuse the default in a federal habeas proceeding).

The Court finds that the conflict-of-interest claim involving pre-trial counsel Mares was first defaulted in the state district court when the district court determined that the issue was not adequately raised in counsel's state post-conviction motion. The claim was defaulted again in the post-conviction appellate proceeding when post-conviction counsel did not raise any conflict-of-interest issue on appeal. It is not clear whether the rule of *Martinez* applies in these circumstances. The state court did address the conflict-of-interest claim as it pertained to *trial counsel's* representation. However, if post-conviction counsel had raised the district court's treatment of his conflict-of-interest claim on appeal, as it pertained to pre-trial counsel, the Colorado Court of Appeals may have declined to hear the claim pursuant to a state procedural rule. *See e.g., DePineda v. Price,* 915 P.2d 1278, 1280 (Colo.1996) ("Issues not raised before the district court in a motion for postconviction relief will not be considered on appeal of the denial of that motion."); *People v. Goldman,* 923 P.2d 374, 375 (Colo. App. 1996) ("Allegations not raised in a Crim. P. 35(c) motion or during the hearing on that motion and thus not ruled on by the trial court are not properly before this court for review."); *People v. Wolfe,* 213 P.3d 1035, 1037 (Colo. App. 2009) (same).

The Court recommends finding that Petitioner cannot demonstrate cause for his procedural default of claim five under the rule of *Martinez* based on the ineffective assistance of post-conviction appellate counsel. However, to the extent *Martinez* may apply to excuse a procedural default caused by the ineffective assistance of post-conviction counsel in the initial review collateral proceeding, the Court has addressed the merits of claim five in Section II below.

**2. Other Factors External to the Defense**

Petitioner further maintains that his procedural default of claim five should be excused because during the time his post-conviction appeal was pending, Colorado Department of

9

Corrections (CDOC) officials denied him access to adequate legal materials to litigate the claim, which effectively denied him the right of access to the courts. ECF 139 at 3; *see also* ECF 144 at 3. Respondents assert that Petitioner's contention lacks merit because Petitioner has been incarcerated in federal, not state prison, since the pendency of this case.

The Court notes that the relevant time period implicated by Petitioner's denial-of-access claim is the period when Petitioner's first post-conviction appeal was pending, not the pendency of the federal habeas action. The state court records attached to Respondents' Pre-Answer Response indicate that Petitioner was in the custody of the CDOC at the Colorado State Penitentiary at the time post-conviction appellate counsel filed the opening brief with the Colorado Court of Appeals in June 2013. *See* ECF 20-7 at 36, certificate of mailing. Even so, it is not clear to the Court why a lack of access to legal materials would have prejudiced Petitioner in raising the conflict-of-interest claim in the state post-conviction appellate proceeding, where Petitioner was represented by counsel. *See, e.g. Ellis v. Jones*, 302 F. App'x 817, 819-20 (10th Cir. 2008) (concluding that habeas petitioner's lack of access to legal materials did not constitute a state-created impediment entitling him to tolling of the AEDPA statute of limitations where petitioner had access to counsel); *Burnett v. Kansas,* 485 F. App'x 288, 289 (10th Cir. 2012) (concluding in prisoner civil rights action that because Plaintiff was represented by counsel, he failed to demonstrate any prejudice from the denial of his request for legal materials). Therefore, Petitioner has failed to demonstrate that his lack of access to legal materials during the pendency of the state post-conviction appeal constitutes cause for his procedural default of claim five.

### B. Fundamental Miscarriage of Justice Exception-Actual Innocence

Petitioner also maintains that his procedural default of claim five is overcome based on his actual innocence. ECF 5 at 2.

To make a viable claim of actual innocence, a habeas petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). *See also Frost v. Pryor,* 749 F.3d 1212, 1231-32 (10th Cir. 2014). The "new reliable evidence" referred to in *Schlup* means "any reliable evidence not presented to the jury" at the applicant's state court trial. *Fontenot*, 4 F.4th at 1033. The petitioner must demonstrate "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327. *See also House v. Bell*, 547 U.S. 518, 538 (2006). The Court is mindful that the *Schlup* standard is "demanding," *McQuiggin v. Perkins,* 569 U.S. 383, 401 (2013), and "that tenable actual-innocence gateway pleas are rare," *id*. at 386, arising only "in an extraordinary case." *Murray*, 477 U.S. at 496. *See also House,* 547 U.S. at 538.

Petitioner points to the following evidence in support of his claim of actual innocence: (1) an affidavit from key prosecution witness, Jaqueela Young; (2) an inculpatory recorded confession from alternate suspect Derrick Moore; (3) an eyewitness positively identifying other potential suspects; and, (4) recanted statements from key witnesses Nanette Calhoun and Kawetta Summers. ECF 5 at 1.

First, Petitioner relies on an affidavit from Jaqueela Young, who was Petitioner's girlfriend at the time of the offense, in which Young states that after Petitioner's trial, her cousin, Derrick Moore, told her he was the shooter. R., Public Documents at 101. Ms. Young tape-recorded Moore's alleged confession to her. R., 6/23/06 Hrg. Tr. at 9-15. Petitioner presented this evidence to the state courts in conjunction with his motion for a new trial and the state courts found no basis for reversal. R., 6/23/06 Hrg. Tr. at 78-79, 82-85; ECF 20-4 at 21-22. With regard to the recorded

11

confession of Mr. Moore, the Colorado Court of Appeals found that "[n]one of the statements that are discernable in the enhanced recording, or that appear to be transcribed from that recording corroborate definitively [Young]'s claim that [Moore] told her he was the shooter." ECF 20-4 at 22. Petitioner does not point to any evidence to refute the state appellate court's factual finding which is presumed correct in this proceeding. *See* 28 U.S.C. § 2254(e)(1). As such, Petitioner fails to demonstrate that the purported recorded confession of Moore that he, not Petitioner, was the shooter, constitutes reliable evidence of Petitioner's actual innocence, under the *Schlup* standard.

As for Young's statement in her affidavit that Moore confessed to her that he was the shooter, Respondents argue that the statement is not reliable or trustworthy, given that Ms. Young proffered her affidavit after she and Petitioner were married and Petitioner had already made several threats to "beat the shit out of" her, "smoke her ass," and shoot up her mother's house if she continued "acting like a snitch." ECF 47 at 17. *See also* ECF 20-4 at 4; R., 2/7/06 Trial Tr. at 97-98, 189-95.

At trial, Ms. Young was examined by the prosecution as a hostile witness regarding her videotaped statements to the police approximately two months after the shooting. R. 2/7/06 Trial Tr. at 52, 63-75. Petitioner told Ms. Young the evening of the shooting that he could not pick her up from work because he and Moore "were hot." *Id.* at 65-66. When Petitioner showed up at Young's apartment the following day, he was with Moore, and Petitioner told Young that he had shot the victim at the Park-n-Ride. *Id.* at 71-74. Ms. Calhoun, Young's mother, testified that approximately six months after the shooting, Young told her that Moore was the shooter, not Petitioner. *Id.*; 2/8/06 Trial Tr. at 23. By the time of trial, Ms. Young had recanted her statements to the police and testified that Petitioner had not been present at the scene of the shooting. *Id.*, 2/7/06 Trial Tr. at 123-29, 136-38. Young testified on cross examination that she learned about the

12

shooting from Moore and Mr. House and that she and her mom wanted to "protect" Moore who was her cousin. *Id.* at 133-38.

The Court finds that Ms. Young's post-trial statements that Moore confessed to her that he was the shooter are completely unreliable given her testimony at trial, which was contradictory to the statements she made to the police closer in time to the shooting, and followed several threats by the Petitioner to harm her. In addition, evidence of Moore's involvement in the shooting was presented at trial, but the jury credited Ms. Young's statements to the police that Petitioner was the shooter. Petitioner fails to demonstrate it is more likely than not that no reasonable juror would have convicted him in light of Ms. Young's affidavit stating that Moore was the shooter. *Schlup*, 513 U.S. at 327.

Respondents next contend that Petitioner's reliance on "eyewitness(es) [who] positively identified other potential suspects" ECF 5, does not meet his burden under *Schlup* because his allegations are refuted by the state record. ECF 47 at 20. The detective who conducted the photo lineups consistently testified that none of the four eyewitnesses who came forward could identify any of the men who were believed to be present at the shooting – Petitioner, Moore, or House. R., 2/7/06 Trial Tr. at 158-59, 162, 206-07; 6/23/06 Hr. Tr. at 47, 80-81. Further, an eyewitness testified at trial that she was not able to identify anyone in the photo lineup. *Id.*, 2/7/06 Trial Tr. at 81.

Petitioner alleges elsewhere in the amended Application that eyewitnesses Jacqueline Jones and Chantelle Humphrey identified other potential suspects in the photo lineups. The state court record reflects that in November 2004, Ms. Jones viewed a photo array which included the picture of Petitioner and an early alternate suspect, Mr. Barnes, and Ms. Jones stated that she "believe[d]" one of the randomly placed photos (who was not Barnes or Petitioner) was the

13

shooter. R., Public Documents at 450. After viewing a December 2004 photo lineup containing Mr. House's photo, Ms. Jones selected House as a man who "possibly could have been there that day of the shooting." *Id.* at 447-449. When viewing a December 2004 photographic lineup containing Petitioner's photo, Ms. Humphrey stated that the man in one of the photos (whose identity is not disclosed by the record) "could be the suspect, but she was not sure." *Id*. at 445. Neither Ms. Jones, nor Ms. Humphrey positively identified any individual who was believed to be associated with the case as the shooter. Although Mr. House was a possible suspect based on information Calhoun had provided to the police, *see* R., 2/8/06 Trial Tr. at 45-46, Ms. Jones was unable to provide a positive identification. Further, the jurors heard testimony about House's potential involvement in the shooting from both Young and Calhoun, but nonetheless credited Young's statements to the police that Petitioner was the shooter. *See id;* 2/7/06 Trial Tr. 133-38. The Court finds that Petitioner fails to point to any identification evidence sufficient to satisfy his burden under *Schlup.*

Finally, Petitioner purports to rely on recanted statements from Calhoun and Kawetta Summers (Petitioner's half-sister) as reliable evidence of his actual innocence. However, Petitioner does not provide any specifics as to the substantive of these witnesses' "recanted statements," neither of whom were eyewitnesses, and, therefore does not come close to satisfying the *Schlup* standard.

The Court finds that Petitioner has failed to establish that his procedural default of claim five should be excused under the fundamental miscarriage of justice—actual innocence exception.

## II. Merits Analysis

Even assuming that Petitioner has overcome the procedural bar to claim five, under the rule of *Martinez* or otherwise, the claim fails on the merits.

"In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). If a defendant can show both an actual conflict and an adverse effect, no further showing of prejudice is necessary. *Strickland v. Washington*, 466 U.S. 668, 692 (1984); *Cuyler*, 446 U.S. at 349-50; *Mickens v. Taylor*, 535 U.S. 162, 174-75 (2002). *See also Holloway v. Arkansas*, 435 U.S. 475, 489-90 (1978) (remedying a conflict of interest arising from counsel's representation of co-defendants which "may well have precluded defense counsel . . . from exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution").

Petitioner must first demonstrate an actual conflict of interest on the part of his pre-trial counsel. *See Cuyler*, 446 U.S. at 348 (noting possible conflicts inherent in "almost every instance of multiple representation," but that ineffective assistance cannot be presumed from potential conflicts). An actual conflict of interest results if counsel was forced to make choices advancing other interests to the detriment of his client. *United States v. Alvarez*, 137 F.3d 1249, 1252 (10th Cir. 1998). "To demonstrate an actual conflict of interest, the petitioner must be able to point to specific instances in the record which suggest an impairment or compromise of his interests for the benefit of another party." *Id.* (internal quotation marks and citation omitted).

The state district court made the following factual findings in conjunction with the post-conviction evidentiary hearing, which are presumed correct under § 2254(e)(1). The criminal complaint against Petitioner was filed on January 5, 2005. R., Public Documents at 458. Six days later, Moore was arrested on a separate, juvenile matter. *Id.*; *see also* ECF 20-13 at 4; 4/6/12 Hrg. Tr. at 66-69.  The DPD's Office represented Moore in the juvenile matter for 13 days, until January 24, 2005, when Moore entered a guilty plea and was sentenced. R., Public Documents, at 458. The

specific attorneys who handled Petitioner's case did not represent Moore. *Id*.; *see also* 4/6/12 Hrg. Tr. at 66-68. Moore was never charged as a co-defendant in Petitioner's case. R., 4/6/12 Hrg. Tr. at 68.

Petitioner contends that the DPD Office's concurrent representation of him and Moore affected pre-trial counsel Mares' ability to investigate Moore as an alternate suspect by precluding her from interviewing Moore and showing his photo to eyewitnesses. ECF 9 at 17; ECF 23 at 4. These allegations lack merit.

At Petitioner's trial, the detective assigned to investigate the case testified that four eyewitnesses came forward after the shooting, that these four witnesses were shown photographic lineups that included Moore's photo, but none of the witnesses identified Moore as the shooter. R., 2/7/06 Trial Tr. at 158, 163, 203-07. Petitioner's speculative allegations that pre-trial counsel would have identified additional eyewitnesses not known to the police, but for the DPD office's concurrent representation of Moore, are unsupported by any specific facts.

Furthermore, the state court record reflects that the detective attempted to interview Moore, who was a juvenile, after Ms. Young implicated Moore in the shooting in late December 2004, but Moore's mother would not allow Moore to be interviewed. R., 6/23/06 Hrg. Tr. at 45-46. Petitioner does not point to any evidence to indicate that Moore would have confessed to being involved in the shooting if pre-trial counsel had attempted to interview him in January 2005, during the 13 days that Moore was also represented by the DPD's Office. The prosecutor's investigator interviewed Moore approximately seven months after Petitioner was charged and Moore denied being present at the shooting. R., 6/23/06 Hrg. Tr. at 36-37; 4/6/12 Hrg. Tr. at 91-92.

Petitioner also maintains that the concurrent representation adversely affected pre-trial counsel's performance in plea negotiations. Petitioner states that pre-trial counsel told him in

16

March 2005 that the gun found in Moore's possession was confirmed to be the gun used in the shooting; however, pre-trial was unable to use that information during plea negotiations because Moore might be charged in Petitioner's case. ECF 9 at 17; ECF 23 at 4-5.

The evidence is uncontested that the gun found in Moore's possession was not the gun used in the shooting and the state district court so found following the post-conviction evidentiary hearing. R., 4/6/12 Hrg. Tr. at 29, 70-71; Public Documents at 457.  Petitioner does not explain how pre-trial counsel could have leveraged Moore's possession of a gun that was not used in the shooting to obtain a more favorable plea deal for Petitioner. Even if there was some indication at the time of plea negotiations that the gun found in Moore's possession was connected to the shooting, Petitioner does not elaborate on the plea negotiations that did take place during the 13 days that the alleged conflict-of-interest existed, or describe any critical negotiations occurring during that specific period.

In sum, Petitioner's factual allegations do not show that pre-trial counsel Mares' conduct during the 13 days that both Petitioner and Moore were represented by the DPD's Office had an adverse effect on pre-trial counsel's representation of Petitioner. Therefore, has Petitioner failed to demonstrate a violation of his Sixth Amendment right to conflict-free counsel.

However, even if the alleged conflict-of-interest did adversely affect pre-trial counsel's performance, resulting in a constitutional error, Petitioner is not entitled to federal habeas relief unless he can demonstrate that the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Fry v. Pliler*, 551 U.S. 112, 116-17 (2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)). Under this test, relief is proper only if the federal court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or

influence in determining the jury's verdict.'" *Davis v. Ayala*, 576 U.S. 257, 267-68 (2015) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)).

The *Brecht* standard applies to Sixth Amendment violations that do not pervade the entire criminal proceeding. *See Acosta v. Raemisch,* 877 F.3d 918, 932-33 (10th Cir. 2017) (citing *Satterwhite v. Texas*, 486 U.S. 249, 256 (1988) (recognizing that a violation of the right to counsel protected by the Sixth Amendment that pervades the entire criminal proceeding can never be considered harmless)). The Court finds that Petitioner's Sixth Amendment claim in this action is subject to harmless error review because the alleged conflict-of-interest which existed during pre-trial counsel's limited representation of Petitioner for 13 days did not pervade the entire criminal proceeding. *See Acosta*, 877 F.3d at 934-35 (applying *Brecht* harmless error standard where petitioner was denied counsel at two hearings, but had counsel for the remainder of his criminal proceeding, including trial and sentencing). *Cf. Holloway,* 435 U.S. at 490-91 (rejecting request to conduct harmless-error analysis and instead automatically reversing where a conflict of interest in representation of co-defendants existed throughout the entire proceeding).

The Court has carefully reviewed the record of Petitioner's state court trial. There was no forensic evidence linking Petitioner to the shooting and no identification testimony that inculpated him or Moore. Two eyewitnesses testified at trial that three men were involved in the shooting. R., 2/6/06 Trial Tr. at 57-69; 108-118. The prosecution's case rested primarily on Ms. Young's statements to the police approximately two months after the shooting that Petitioner told her that he shot the victim. R., 2/7/06 Trial Tr. at 64-75. Young's statements to the police indicated that Moore was also present at the shooting. *Id.* at 64-75, 80. At trial, Young recanted her statements to the police that Petitioner was the shooter and testified that Moore and House, who was also her cousin, told her about the shooting, not Petitioner. *Id.*, 2/7/06 Trial Tr. at 77, 133-38. The

18

prosecution introduced tape recorded jail calls between Petitioner and Young into evidence in which Petitioner refers to Moore and House and their involvement in the ongoing police investigation of the shooting. *Id.* at 189-95, 201. Although trial counsel suggested Moore as an alternate suspect to the jury during cross examination of prosecution witnesses and in closing argument, counsel decided not to introduce evidence that Moore was found in possession of a gun shortly after the shooting. Trial counsel testified at the state post-conviction hearing that the gun would have provided the jury with physical evidence connecting Petitioner to the crime, given the testimony that Petitioner and Moore were friends and were both present at the shooting. R., 4/6/12 Hrg. Tr. at 71-72. Trial counsel further testified that the prosecutor informed him prior to trial that if he introduced the gun found in Moore's possession and claimed that Moore was the shooter, Petitioner would be prosecuted for attempted first degree murder under a complicity theory.[2] *Id.* at 76. Because the jury credited Ms. Young's statements to the police over her contradictory trial testimony and found that Petitioner was one of three men that witnesses described as being present and involved in the at RTD Park-n-Ride shooting, it is reasonably likely that, had evidence of Moore's possession of a gun been introduced, Petitioner would have been convicted as a complicitor.

The Court finds that Petitioner fails to demonstrate that pre-trial counsel's conduct during the 13 days that she represented Petitioner while Moore was represented by another attorney in the DPD's Office had a substantial and injurious effect on the jury's verdict.

---

[2] Colorado's complicity statute provides:

> A person is legally accountable as principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense.

COLO.REV.STAT. § 18-1-603 (2021).

Claim five of the amended Application should be denied as procedurally defaulted, or alternatively, on the merits. The Court finds that an evidentiary hearing is not warranted because there is no factual dispute outside of the state court record that is material to the Court's resolution of claim five. *See Sandoval v. Ulibarri,* 548 F.3d 902, 915 (10th Cir. 2008) (recognizing that "an evidentiary hearing is unnecessary if the claim can be resolved on the record.") (quoting *Anderson v. Att'y Gen. of Kan.,* 425 F.3d 853, 859 (10th Cir. 2005)); *see also Schriro v. Landrigan,* 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

## CONCLUSION

The Court **recommends** that claim five of the amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [filed February 8, 2016; ECF 9] be **denied** as procedurally defaulted, or, alternatively, on the merits.

The Court **recommends** that the amended Application be **dismissed with prejudice**.

The Court **recommends** that a certificate of appealability be **denied** because Petitioner has not made a substantial showing that jurists of reason would debate the correctness of this procedural ruling or that his constitutional rights were violated not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Fed. R. Governing Section 2254 Cases 11(a); *Slack v. McDaniel*, 529 U.S. 473, 483-85 (2000).

Respectfully submitted this 21st day of December, 2021, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

20